FILED
GARFIELD COUNTY, OKLA.

**IN THE DISTRICT COURT OF GARFIELD COUNTY**   AUG 0 4 2014
**STATE OF OKLAHOMA**

MARGARET F. JONES
COURT CLERK
BY_____
DEPUTY COURT CLERK

**JOHANNA DABBS** )
   Plaintiff, )
 )
 )   Case No. CJ- 14-RS1-1
v. )
 )
**SHELTER MUTUAL INSURANCE COMPANY** )
**aka SHELTER MUTUAL INSURANCE CO.** )
and **WYMAN WEST**, Agent )
   Defendants. )

## PETITION

COMES NOW, the Plaintiff, Johanna Dabbs, (hereinafter "Plaintiff"), for her claims against Defendants, Shelter Mutual Insurance Company aka Shelter Mutual Insurance Co. (hereinafter "Shelter"), and Wyman West, Agent (hereinafter "West"), states as follows:

1.   Plaintiff is a resident of the State of Oklahoma.

2.   Defendant Shelter is a corporation incorporated under the laws of the State of Missouri.

3.   Defendant Shelter has an agent located in Garfield County, Oklahoma.

4.   Defendant West is a Shelter agent licensed and doing business in the State of Oklahoma.

5.   Plaintiff entered into a contract of insurance with Defendant Shelter to provide automobile insurance.

6.   The policy promised liability coverage for bodily injury liability.

7.   For accidents occurring in Oklahoma, the policy promised per person bodily injury policy limits of $25,000.

1

8.    For accidents occurring in Texas, the policy effectively promised per person bodily injury policy limits of $30,000.

9.    Plaintiff purchased automobile insurance policy number 35-1-7792711-1 through the offices of Defendant West.

10.   At the time Plaintiff purchased her automobile insurance policy with Defendant Shelter, Defendant West was an agent of Defendant Shelter.

11.   Defendant West was familiar with the Plaintiff and served as her primary insurance agent for her automobile insurance needs.

12.   Defendant West advised Plaintiff of her need to maintain automobile insurance.

13.   Plaintiff relied on Defendant West's representations and purchased automobile insurance.

14.   Plaintiff trusted and believed Defendant West had the requisite insurance agent skills and expertise to properly procure the insurance coverage Plaintiff had requested.

15.   Thereafter, Defendant Shelter issued the automobile insurance policy number 35-1-7792711-1.

16.   Shelter represented to the Plaintiff, directly and through its agent, Defendant West, that it would conduct itself in accordance with Oklahoma law and would fully and fairly investigate and pay claims.    Plaintiff relied upon said representations.

17.   On or about the 13th day of August 2011, the Plaintiff was involved in an automobile accident in Harris County, Texas in which Vincent Calderon sustained serious bodily injuries.

2

18.    Because the accident occurred in Texas, the applicable per person bodily injury
       policy limits were $30,000.

19.    Counsel for Vincent Calderon sent a demand letter to Shelter on September 15,
       2011 requesting the applicable $30,000 policy limits to settle the claims of
       Vincent Calderon arising out of the automobile accident that occurred on August
       13, 2011.

20.    On September 16, 2011, Shelter responded to the settlement demand by
       requesting the medical bills for Mr. Calderon and medical records from Dr.
       Rodriguez, who had recommended surgery for Mr. Calderon to repair his broken
       leg.

21.    However, rather than offering to pay the policy limits, Shelter requested an
       extension of the September 20, 2011 deadline to accept the settlement demand
       for the policy limits.

22.    On September 21, 2011, counsel for Mr. Calderon responded to Shelter's
       request for information by providing the ambulance and emergency room bills for
       Mr. Calderon totaling $13,113.00 and a medical report prepared by Dr.
       Rodriguez regarding Mr. Calderon and another copy of his surgical estimate of
       $32,400.

23.    In this letter, Mr. Calderon's counsel again demanded the $30,000 policy limits,
       and **OFFERED A FULL AND UNCONDITIONAL RELEASE OF MR.
       CALDERON'S CLAIMS AND ANY MEDICAL LIENS.**

3

24.   If Shelter had acted in good faith, accepted the demand, and paid the Plaintiff's policy limits of $30,000, then the Plaintiff would have been completely released of all legal liability back in 2011.

25.   Mr. Calderon's counsel thereafter agreed to extend the deadline to accept the policy limit settlement demand to September 26, 2011.

26.   Again, rather than simply pay the obviously owed policy limits, Shelter hired a law firm who wrote Mr. Calderon's counsel a letter that reiterated that Shelter could not accept the demand for the per person policy limits of $30,000 because it was still investigating the claims of others.

27.   On September 27, 2011, counsel for Mr. Calderon sent a letter to Shelter's lawyer advising that the deadline to accept the settlement demand had expired. Counsel for Mr. Calderon also informed Shelter that the reason given for the failure to accept the settlement demand – that it was still investigating the claims of other parties who were alleged to be injured in the same collision – was insufficient to protect Shelter from liability and pointed out that when faced with a settlement demand arising out of multiple claims and inadequate proceeds, an insurer may enter into a reasonable settlement with one of the several claimants even though such settlement exhausts or diminishes the proceeds available to satisfy other claims.

28.   In comparison, the two other bodily injury claims were insignificant in comparison to the claim of Mr. Calderon.  Had Shelter conducted a reasonable investigation, it would have known this and immediately accepted the policy limit settlement demand of Mr. Calderon's counsel.

4

29.   Counsel for Mr. Calderson wrote further to Shelter stating, "Ms. Dabbs should be
      specifically informed that Shelter has potentially exposed her to an excess
      judgment by refusing to accept a reasonable settlement offer within policy limits.
      I strongly recommend that you notify Ms. Dabbs in writing of these events..."

30.   At trial, Plaintiff was found legally liable for the amount of bodily damages caused
      to Vincent Calderon, in the amount of $622,135.60, plus pre-judgment interest of
      $77,766.95, together with post-judgment interest at the rate of five percent
      (5.0%) per annum from the date of judgment until paid, currently at about
      $2,934.16, and costs of court of approximately $4,296.39.  The total amount of
      the judgment against Plaintiff is in excess of **$707,133.10**.[1]

## FIRST CAUSE OF ACTION
## BREACH OF CONTRACT

31.   Plaintiff entered into a contract of insurance with Defendant Shelter to provide
      coverage for bodily injury liability.

32.   The automobile insurance policy with Shelter was in full force and effect at all
      material times hereto.

33.   Plaintiff provided all information requested to the Defendant Shelter relevant to
      the claims that arose from the automobile accident of August 13, 2011.

34.   Plaintiff has in all material ways, complied with the terms and conditions of the
      policy.

35.   Defendant Shelter, however, has breached its contractual obligations under the
      terms and conditions of the insurance contract with Plaintiff by, among other

---

[1] See Cause No. 2011-76748, Vincent Calderon v. Johanna Dabbs, in the District Court of Harris County, Texas, 333rd Judicial District.

things, failing to pay out the applicable bodily injury policy limits when placed on demand to do so by counsel for Mr. Calderon.

36. As a result of Defendant Shelter's breach of contract and other wrongful conduct, Plaintiff sustained financial losses in excess of **$707,133.10**, and mental and emotional distress in an amount in excess of $75,000, exclusive of attorneys' fees, costs and interest.

## SECOND CAUSE OF ACTION
## BAD FAITH

37. Defendant Shelter owed a duty to Plaintiff to deal fairly and in good faith.

38. Defendant Shelter breached its duty to deal fairly and in good faith by engaging in the following acts and omissions:

   **a.** failing to pay the full amount of the policy limits of $30,000 when placed on demand to do so (see above for more in depth discussion of this);

   **b.** purposefully, wrongfully, and repeatedly refusing to pay out the applicable policy limit of $30,000 when placed on demand to do so;

   c. forcing Plaintiff to retain counsel to force Shelter to pay the applicable verdict that was caused solely due to breach of contract and bad faith conduct of Defendant Shelter;

   d. failing to perform a fair and objective investigation of the damage claims of the various parties who alleged injuries as a result of the subject automobile accident (see above for more in depth discussion related to this);

   e. placing the financial interest of Defendant Shelter over that of the Plaintiff by refusing the settlement demand discussed herein; and

   f. in other ways to be set forth at the conclusion of discovery.

6

39.    Defendant Shelter's obligations arise from both the express written terms of the policy and state insurance code. Defendant Shelter's failure to implement and/or follow applicable statutory insurance codes constitutes bad faith.

40.    The conduct of Defendant Shelter, as described above, constitutes bad faith and is a material breach of the terms and conditions of the insurance contract between the parties.

41.    As a direct result of Defendant Shelter's bad faith, the claims at issue in this case were unnecessarily delayed; inadequately investigated, and resulted in the Plaintiff being unnecessarily subjected to judgment in excess of $707,133.10.

42.    As a result of Defendant Shelter's conduct, Plaintiff has sustained financial losses in excess of $707,133.10, mental and emotional distress for an amount in excess of $75,000, exclusive of attorneys' fees, costs and interest, and other damages to be set forth at the conclusion of discovery.

43.    Defendant Shelter's conduct was intentional, willful, malicious and in reckless disregard for the rights of Plaintiff, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## THIRD CAUSE OF ACTION
## NEGLIGENCE IN THE PROCUREMENT OF INSURANCE

44.    Defendant West was familiar with Plaintiff. Plaintiff had hired Defendant West as her primary insurance agent for her automobile insurance needs.    In said capacity, Defendant West advised the Plaintiff of the need to purchase and maintain automobile insurance coverage in the event that an automobile accident occurred and the Plaintiff was held legally liable for bodily injuries.

45.   Plaintiff relied on Defendant West's representations and purchased coverage and paid the premiums.

46.   Defendant West procured the subject automobile policy, providing for automobile insurance that would provide coverage in the case of an automobile accident where the Plaintiff was held legally liable for bodily injuries to some third party.

47.   At all times relevant hereto, Defendant West was an agent of Defendant Shelter.

48.   Defendant West owed Plaintiff a duty to act in good faith and to exercise reasonable care, skill and diligence in the procurement of insurance for the Plaintiff.

49.   Defendant West had a duty to inform Plaintiff of all coverages, benefits, limitations, and exclusions in the coverage procured.

50.   Defendant West breached his duty owed to Plaintiff and is liable to Plaintiff because through the fault of Defendant West, the insurance requested by Plaintiff did not perform as promised, did not protect the Plaintiff, and Plaintiff suffered a terrible loss as a result.

51.   Defendant West breached his duty owed to Plaintiff by:

a. Procuring an insurance policy which did not serve to actually pay the applicable policy limits when placed on a reasonable demand that they be paid out in order to protect Plaintiff from financial catastrophe;

b. Procuring an policy which did not serve to protect the Plaintiff from bodily injury legal liability;

8

c. Procuring a policy which was written by Shelter, a company that breached the duty of good faith and fair dealing in the manner set forth herein and more fully described above;

d. Procuring a policy of insurance with woefully inadequate policy limits;

52. Plaintiff relied on Defendant West to procure and maintain appropriate and adequate coverage. Defendant West knew, or should have known, Plaintiff relied on Defendant West to procure appropriate and adequate coverage, and it was foreseeable that the failure to procure appropriate and adequate coverages for the Plaintiff could unnecessarily expose her to significant harm, loss, and damage, including excess liability.

53. Defendant West is the agent or Defendant Shelter, and Defendant Shelter is vicariously liable for the conduct of Defendant West.

54. As a result of Defendant Shelter's conduct, Plaintiff has sustained financial losses in excess of $707,133.10, mental and emotional distress in an amount in excess of Seventy Five Thousand Dollars ($75,000), exclusive of attorneys' fees, costs and interest, and other damages to be set forth at the conclusion of discovery.

55. Defendant Shelter's conduct was intentional, willful, malicious and in reckless disregard for the rights of Plaintiff, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

## FOURTH CAUSE OF ACTION
## NEGLIGENT UNDERWRITING

56.   The Defendants owed a duty to Plaintiff to exercise good faith, reasonable care, skill and expertise in the underwriting analysis to ensure the insurance policy provided appropriate and adequate liability coverage.

57.   At the time the policy was sold, Defendants were obligated to utilize reasonable methodology to determine an appropriate level of liability coverage.

58.   Defendants breached their duties to Plaintiff to exercise good faith, reasonable care, skill and expertise in failing to establish an accurate and consistent methodology for calculating the amount of liability coverage reasonable under the circumstances.

59.   Defendants' breach resulted in Plaintiff being unnecessarily subjected to excess liability exposure and financial ruin.

60.   Defendants' duty to procure a proper amount of liability protection exists due to the foreseeability of the harm to Plaintiff, which could occur as a result of failure to underwrite or procure adequate and appropriate insurance.

61.   The procurement of inadequate insurance is the direct cause of the harm and injury suffered by Plaintiffs; and the moral blame for the failure to procure and underwrite the correct policy lies with the Defendants.

62.   The burden on the Defendants of imposing a duty to exercise care in procuring and underwriting the correct policy for the needs of the insured (with resulting liability for breach) is minimal, given the expertise of the Defendants, and their representations that they are experts in the field of providing insurance coverage to the general public, such as Plaintiff.

63.    Plaintiff relied on the Defendants to conduct an appropriate underwriting analysis to ensure the insurance policy provided appropriate and adequate coverage.

64.    The Defendants breached their duty owed to Plaintiffs by failing to conduct an appropriate underwriting analysis which resulted in issuing and/or renewing a policy of insurance to/for Plaintiffs that did not provide appropriate and adequate levels of coverage to Plaintiffs.  Defendant West was an agent, employee and/or ostensible agent of Defendant Shelter, and Defendant Shelter is vicariously liable for Defendant West's breach of duty.

65.    As a result of Defendants' conduct, Plaintiff has sustained financial losses for an amount in excess of $707,133.10, mental and emotional distress for an amount in excess of Seventy Five Thousand Dollars ($75,000), exclusive of attorneys' fees, costs and interest and other damages to be set forth at the conclusion of discovery.

66.    Defendant Shelter's conduct was intentional, willful, malicious and in reckless disregard for the rights of Plaintiff, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages.

### FIFTH  CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTY

67.    A special relationship akin to that of a fiduciary duty exists between the Defendants and Plaintiff stemming from the quasi-public nature of insurance, the unequal bargaining power between the Defendants and Plaintiff, and the potential for Defendants to unscrupulously exert that power at a time when Plaintiff is most vulnerable.    As a result of this special relationship, the

Defendants owed a fiduciary duty to their insured to act in a manner consistent with the interests of its insured.

68.   A fiduciary relationship existed between Plaintiff and Defendant West.   The overmastering influence of Defendant West over Plaintiff, and Plaintiff's dependency and trust in her insurance agent, Defendant West, which was justifiable, and Defendant West's assurance he could procure the insurance policy Plaintiff requested, creates a fiduciary status with respect to Defendant West as it relates to Plaintiff. Defendant West's duty to act reasonably given the specialized knowledge he possessed of the terms and conditions of insurance policies created such a special relationship as to make Defendant West a fiduciary.

69.   The Defendants breached their fiduciary duties owed to the Plaintiff.

70.    As a result of the Defendants' breach of fiduciary duties, Plaintiff sustained financial losses in excess of $707,133.10, mental and emotional distress in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) exclusive of attorneys' fees, costs and interest, and other damages to be set forth at the conclusion of discovery.

71.   The conduct of Defendants was intentional, willful, malicious and in reckless disregard of the rights of the Plaintiffs, and is sufficiently egregious in nature so as to warrant the imposition of punitive damages for an amount that is many times the other above referenced damages.

## **PRAYER FOR RELIEF**

72. As a result of Defendants' conduct, Plaintiff sustained financial losses in excess of $707,133.10, mental and emotional distress for an amount in excess of $75,000, exclusive of attorneys' fees, costs and interests, and other damages to be set forth at the conclusion of discovery.

73. The conduct of Defendants was intentional, willful, malicious, and in reckless disregard for the rights of the Plaintiff, and is sufficiently egregious in nature as to warrant the imposition of punitive damages.

74. Punitive damages should be provided in an amount, which is many times the total amount of other damages.

75. Plaintiff demands judgment for an amount in excess $707,133.10 for actual financial losses, an amount in excess of $75,000 for mental and emotional distress, exclusive of attorneys' fees, costs, and interest, and other damages to be set forth at the conclusion of discovery.    Plaintiff also will request the jury provide a verdict of punitive damages to punish and deter the Defendant Shelter from engaging in similar conduct in the future and to deter other insurers from like conduct.

**RESPECTFULLY SUBMITTED:**

Branum Law Firm, PLLC
John L. Branum, OBA# 20165
7701 S. Western Avenue, Suite 205
Oklahoma City, Oklahoma 73139
Email: JOHN@BRANUMLAWFIRM.COM
Phone: (800) 318-9950
Fax: (800) 418-8210
ATTORNEYS FOR PLAINTIFF

- and-

Mitchel, Gaston, Riffel & Riffel, PLLC
Jay M. Mitchel, OBA# 20784
3517 W. Owen K. Garriott Rd. #1
Enid, OK 73703
Email: JMITCHEL@WESTOKLAW.COM
ATTORNEYS FOR PLAINTIFF

14