IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| JOHANNA DABBS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-15-00148-D |
| SHELTER MUTUAL INSURANCE COMPANY aka SHELTER MUTUAL INSURANCE CO., | ) ) ) ) | |
| Defendant. | ) | |

**ORDER**

Before the Court is the Motion for Summary Judgment [Doc. No. 92] filed by Shelter Mutual Insurance Company. Johanna Dabbs has filed a Response [Doc. No. 99] to which Defendant has replied [Doc. No. 102]. The matter is fully briefed and at issue. Pursuant to Rule 56 and this Court's Order [Doc. No. __], Defendant's Motion to Strike Affidavit of Joseph Gourrier, along with all accompanying briefs, will be considered as an objection to Exhibit 1 in Plaintiff's Response [Doc. No. 99], and addressed as part of the Court's ruling on summary judgment.

**BACKGROUND**

The following facts are undisputed unless otherwise noted. Plaintiff was insured under an automobile insurance policy ("Policy") issued by Defendant. Motion at 5. After purchasing the Policy, Plaintiff was involved in an automobile accident in Harris County, Texas. *Id*. The accident happened because Plaintiff ran a red light. *Id*. Plaintiff's car then clipped a vehicle driven by April Andrade ("Andrade") and struck another vehicle, which Mayra Sierra ("Sierra") was driving and in which Vincent

1

Calderon ("Calderon") was a passenger. *Id.* at 5–6. Andrade, Sierra, and Calderon were all injured in the accident. *Id.* at 13.

The accident took place on Saturday, August 13, 2011. *Id.* On Monday, August 15, 2011, Sheri Edwards, the adjuster for the injury claims ("Claims Adjuster"), contacted Plaintiff, Andrade, and Sierra, and attempted to contact Calderon. *Id.* During that initial contact, Andrade and Sierra stated they had been injured and informed Defendant that Calderon was injured as well. *Id.* On August 17, Defendant learned that the same attorney, Joseph Gourrier ("Gourrier"), would represent Calderon and Sierra. *Id.* at 3. Gourrier informed Defendant that Calderon had a broken leg and Sierra had both neck and arm injuries. *Id.*

On September 15, Gourrier made a policy limits demand for Calderon's claim, offering to settle for $30,000. *Id.* Gourrier gave Defendant five days to respond to the request. *Id.* at 11. Defendant, at this time, still did not have Andrade's medical authorization, Sierra's medical bills or records, and had incomplete records for Calderon. *Id.* at 10–11. Concerned that she did not have sufficient information about all injuries and a policy limit that could subject the insured to excess liability, the Claims Adjuster discussed her concerns with her supervisor, requested more information from Gourrier, and attempted to recontact Andrade. *Id.* at 11. Defendant retained counsel to assist with handling the insurance claims. *Id.* at 12. Counsel advised that—under Texas law—Defendant had no obligation to consider competing claims and recommended Defendant accept Gourrier's settlement offer. *Id.* at 12. Three days after the expiration of Gourrier's deadline, Defendant offered $30,000 for

Calderon's claim. *Id.* at 13. Gourrier refused to accept the policy limit tender. *Id.* Calderon sued Plaintiff. *Id.* Defendant retained counsel for Plaintiff in the litigation. *Id.* Plaintiff was found legally liable for an amount exceeding $700,000.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

This Court, through a choice of law analysis, has previously ruled that Oklahoma law governs the resolution of this diversity action. *See* Order, Doc. No. 64.

## DISCUSSION

The Court will first address Defendant's objection to Exhibit 1 in Plaintiff's Response. Next the Court will turn to Defendant's Motion for Summary Judgment.

**I.   The Court will only consider Plaintiff's Exhibit 1 to the extent that it contains statements that could be reduced to admissible evidence at trial.**

Defendant has objected to the Court relying on Exhibit 1, Gourrier's affidavit, attached to Plaintiff's Response [Doc. No. 99]. Defendant asserts that Gourrier's affidavit includes inadmissible statements. Doc. No. 101 at 1–2. Specifically, Defendant argues Gourrier should not be able to provide testimony about[1]: (1) the applicable law; (2) the meaning of Plaintiff's insurance policy; (3) other person's thoughts or motives; (4) his opinion as to whether Defendant acted in bad faith; (5) medical opinions; and, (6) statements qualifying as hearsay. *See id.* at 7–15.

Although Rule 56 allows the use of materials that are not usually admitted at trial, such as affidavits, "[a] party may object that the material cited . . . cannot be presented in a form that would be admissible in evidence." *See* Fed. R. Civ. P. 56(c)(2). Under this rule, "the form of evidence produced . . . at summary judgment may not need to be admissible at trial, [but] 'the content or substance of the evidence must be admissible.'" *Johnson v. Weld Cty.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quoting *Thomas v. Int'l Bus.*

---

[1] Defendant, in its Motion to Strike, concedes some of the paragraphs in Gourrier's affidavit appear factual. Doc. No. 101 at 1. Thus, the Court will consider Defendant's argument that Gourrier's testimony should be restricted, rather than ignored in its entirety. Gourrier was listed as a witness expected to be called at trial. Though Defendant alleges Gourrier is biased, it is not for the Court, here, to make any determinations as to Gourrier's credibility.

*Mach.*, 48 F.3d 478, 485 (10th Cir. 1995)). Thus, in ruling on summary judgment, courts must disregard evidence if there is a proper objection to its use and its proponent cannot show that the evidence in question could eventually be admissible at trial. *See Montes v. Vail Clinic*, 497 F.3d 1160, 1176 (10th Cir. 2007); *Johnson*, 594 F.3d at 1209.

> *A. The Court will not consider any of Gourrier's statements concerning applicable law.*

Defendant points out that Gourrier's affidavit includes several legal conclusions. Motion to Strike at 7.

Not all testimony regarding legal issues is excluded. A legal expert's testimony is proper under Rule 702 "if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding function." *Specht v. Jensen*, 853 F.2d 805, 809–10 (10th Cir. 1988); *see also United States v. Kingston*, 971 F.2d 481, 486 (10th Cir. 1992). "In no instance can a witness be permitted to define the law of the case." *Specht*, 853 F.2d at 809. Allowing a legal expert to testify in this fashion is reversible error. *Id.*

Gourrier has not been listed as an expert witness, and Defendant has not been provided with a Rule 26 report. *See* Plaintiff's Expert Witness List, Doc. No. 98. The deadline to do so has expired. *See* Order, Doc No. 94. To the extent Gourrier's testimony amounts to expert witness testimony on legal issues, the Court will disregard the same. Further, Defendant is correct to point out that Gourrier, in his affidavit, improperly attempts

to "direct the jury's understanding of the legal standards upon which their verdict must be based." *Specht*, 853 F.2d at 809. For example, Gourrier states[2]:

> Between the information provided in Calderon's emergency room records and Dr. Rodriguez's estimate, it should have been clear to an ordinarily prudent insurer than an excess judgment would result where the policy limit was only $30,000.
>
> Under Oklahoma law, Shelter had an affirmative duty to make an offer to settle Calderon's claims once liability was clear and the likelihood of an excess judgment existed because of the severity of the injuries.
>
> Under Texas law, Shelter could not have had a good faith belief that anticipating potential injury claims from Sierra or Andrade was a reasonable basis for refusing to timely accept Calderon's September 15th demand for policy limits because that rationale was expressly rejected by the Texas Supreme Court.
>
> As such, a "Claimant" for purposes of the Dabbs automobile liability insurance policy with Shelter necessarily means . . . neither my client, Mayra Sierra, nor April Andrade were Claimants under coverage.

Response, Doc. No. 99, Ex-1 at ¶¶ 34, 40, 55. 74, 76. It is for this Court alone to say what the law is in this case. *See Kingston*, 971 F.2d at 486. In ruling on summary judgment, the Court will not consider Gourrier's affidavit concerning applicable law nor any paragraphs where Gourrier states legal conclusions by applying law to the facts. This includes, *inter alia*, statements regarding the meaning of Plaintiff's insurance policy and whether certain actions constituted bad faith. *See Myers v. All. for Affordable Servs.*, 371 F. App'x 950, 961 (10th Cir. 2010) (upholding a district court's decision to strike legal

---

[2] These paragraphs are meant to serve as illustrations of Gourrier's inadmissible statements. They are not a comprehensive list of all paragraphs the Court considers to be inappropriate conclusions, opinions, or applications of law in the affidavit. The affidavit is too long and the problems too pervasive to include them all in this Order.

6

conclusions from an affidavit); *Okland Oil Co. v. Conoco Inc.,* 144 F.3d 1308, 1328 (10th Cir. 1998) ("Generally, an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts."); *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 1996 OK 28, 912 P.2d 861 (Under Oklahoma law, interpretation of insurance contract is determined by the court as matter of law.).

> B. *The Court will not consider any of Gourrier's statements concerning medical opinions.*

Defendant also asserts that Gourrier's affidavit improperly introduces medical conclusions, which he is not qualified to present.

Under the Federal Rules of Evidence, the opinion of a lay witness is limited to one that is "rationally based on the witness's perception . . . and not based on scientific, technical, or other specialized knowledge within the scope of the [rule of expert testimony]." Fed. R. Evid. 701. "The primary purpose of Rule 701 is to allow nonexpert witnesses to give opinion testimony when, as a matter of practical necessity, events which they have personally observed cannot otherwise be fully presented to the court or the jury." *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 846 (10th Cir. 1979). "Generally, however, [Rule 701] does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." *Id.*

"[A] lay witness with experience could testify that a substance appeared to be blood, but . . . [he] would have to qualify as an expert before he could testify that bruising around the eyes is indicative of skull trauma." *Id.* Advisory Committee's Note (2000).

7

The Tenth Circuit has said that a lay witness may testify to someone's "unusual, abnormal or bizarre conduct" and opine on his sanity, *United States v. Goodman*, 633 F.3d 963, 968–69 (10th Cir. 2011), but not to his "manic depressive state." *United States v. Walshe*, 526 Fed. Appx. 834, 839 (10th Cir. 2013); *accord Felkins v. City of Lakewood*, 774 F.3d 647, 651–52 (10th Cir. 2014).

Gourrier cannot testify as an expert and does not claim to have any medical training, so his testimony on medical issues cannot be "based on scientific, technical, or other specialized knowledge." Fed. R. Evid. 701. Gourrier's affidavit, in many instances, introduces statements that go beyond what is permissible as lay witness testimony. These include, but are not limited to the following:

> The urgent need for Calderon to have surgery meant time was of the essence in handling Calderon's injury claim . . . getting him the medical treatment he desperately needed in a timely manner.

> I also recall advising Sheri that April Andrade . . . was not seriously injured.

> I was extremely worried that he would develop a fat embolism or other complications and die while waiting to receive the $30,000 settlement.

Response, Doc. No. 99, Ex-1 at ¶¶ 14, 17, 29. These are statements beyond Gourrier's personal knowledge. That Gourrier may have handled other personal injury claims does not place him in a position to diagnose Calderon. *See* Response to Motion to Strike at 4. As such, the Court will disregard any medical opinions Gourrier includes in his affidavit in ruling on summary judgment. *See Felkins,* 774 F.3d at 652 ("[Affiant's] declarations are admissible insofar as they describe her injuries and symptoms, such as pain and difficulties walking, standing, and lifting. They are inadmissible, however, insofar as they

8

diagnose her condition as avascular necrosis or state how that condition causes limitations on major life activities, for those are clearly matters beyond the realm of common experience and . . . require the special skill and knowledge of an expert witness.").

> *C. The Court will not consider any of Gourrier's statements which concern other person's thoughts or motives or otherwise qualify as hearsay.*

Finally, Defendant asserts that Gourrier's affidavit includes statements which constitute inadmissible hearsay and improperly reference the thoughts and motives of others. Motion to Strike at 14–15.

At the summary judgment stage "the nonmoving party need not produce evidence 'in a form that would be admissible at trial,' *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986), but the content or substance of the evidence must be admissible." *See Thomas.*, 48 F.3d at 485. This includes inadmissible hearsay. *See Hardy v. S.F. Phosphates Co.*, 185 F.3d 1076, 1082 (10th Cir. 1999).

Throughout his affidavit Gourrier includes inadmissible declarations about statements made by others in an attempt to prove the truth of the matter asserted. He also makes inadmissible statements about others' state of mind:

> Calderon's Mother, Maria Calderon, was providing care for her son and she was desperate to get him medical attention because she could not properly care for him with his broken leg.
>
> Dr. Rodriguez said he could perform the surgery on Calderon but required payment in advance and that the medical facility would also require payment in advance since Calderon did not have health insurance.
>
> On September 28, 2011 Hansen finally advised Sheri of what should have been obvious all along.

9

Response, Doc. No. 99, Ex-1 at ¶¶ 7,9,71. To the extent that Gourrier's Affidavit includes inadmissible hearsay and inadmissible statements about the mental state of others, the Court declines to consider it as part of its ruling on summary judgment. *Hardy*, 185 F.3d at 1082 n.5 (where the Tenth Circuit, in a footnote, indicated that "[they would only] consider the non-hearsay statements contained in the submitted affidavits.").

Therefore, Defendant's objections to Gourrier's affidavit are sustained as set forth herein, and the Court will limit its reliance on Exhibit 1 to factual matters regarding Gourrier's involvement in Plaintiff's claim.

## II. There is an issue of material fact precluding summary judgment on Plaintiff's breach of contract claim.

Defendant asserts in its Motion that there is no evidence of breach of contract. Motion at 18. Defendant points to the fact that it never denied that coverage existed under the Policy. *Id.* Defendant accepted coverage and attempted to handle and resolve claims as they were presented. *Id.* Defendant further retained counsel for Plaintiff when Plaintiff was sued. *Id.* Thus, Defendant asserts, there is no evidence that the benefits of the Policy were not provided or that the contract was breached. *Id.*

Plaintiff responds that Defendant breached its contractual duty to settle when it rejected Calderon's offer to settle for the policy limits. Response at 16. Plaintiff points to the fact that the Claims Adjuster was unreasonable in not accepting the settlement offer. *Id.* The Claims Adjuster was concerned about competing claims even after counsel for Defendant advised that—under Texas law—there was no need to consider competing claims to a liability policy. *Id.* Counsel also advised that Calderon's offer

10

met the three essential elements of a duty to settle under Texas law. *Id.* Plaintiff argues that the insurer's duty under Oklahoma law is essentially the same as the duty imposed by Texas law. As such, Defendant breached its duty to settle under either standard. *Id.* Further, Plaintiff states that Defendant had enough information to value the claims, as Defendant knew Sierra had only reported being sore from the accident. Response at 6. Defendant knew this because Calderon's attorney, who was also representing Sierra and had sole access to her medical records, had told them so. Reply at 2.

Defendant replies that under Oklahoma law, an insurer has a duty to consider competing claims before settling. Here, there were "two per-person limits and three individuals claiming injury." Reply at 2. Had "the insurer paid a full per-person limit to Calderon, only to later discover that [the competing claims] far exceeded the per-person policy limits and the insured was left exposed to those claims, then Plaintiff would certainly have claimed that the insurer was wrong in paying the first demand without evaluating the competing claims and attempting to obtain a global settlement." *Id.* This was an Oklahoma policy, with an Oklahoma insured, and—pursuant to this Court's choice-of-law analysis—Oklahoma law governs the insurer's duties. Order, Doc. No. 64, at 8–9.

To demonstrate breach of contract, Plaintiff must prove: "1) formation of a contract; 2) breach of the contract; and, 3) damages as a direct result of the breach." *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). Breach of contract is a "material failure of performance of a duty arising under or imposed by agreement." *Milroy v. Allstate Ins. Co.,* 151 P.3d 922, 926 (Okla. Civ. App. 2006).

11

Oklahoma law places "a very great duty" upon an insurer to determine whether litigation against its insured should be settled when it can be within policy limits. *Hazelrigg v. Am. Fid. & Cas. Co.*, 241 F.2d 871, 873 (10th Cir. 1957) (citing *Nat'l Mut. & Cas. Co. v. Britt*, 200 P.2d 407 (1948)). "An insurer's obligation to negotiate settlements honestly and fairly arises from contract, 7C APPLEMAN, INSURANCE LAW AND PRACTICE 381 § 4711, and also from the right to control the insured's defense." *Magnum Foods, Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1504 (10th Cir. 1994) (citing *Moore v. United States Fidelity & Guaranty Co.*, 325 F.2d 972, 974 (10th Cir. 1963)).

"[A]n insurance company's decisions regarding settlement must be made based on a thorough investigation of the underlying circumstances of the claim and on informed interactions with the insured." *Badillo v. Mid Century Ins. Co.,* 121 P.3d 1080, 1095 (Okla. 2005). The following principles of an insurer's liability for wrongful payout are generally accepted: (1) an insurer who chooses to pay one of two or more competing claimants does so at its own risk; and, (2) payment to the named beneficiary with notice of another person's adverse claim renders an insurer liable to the legally entitled claimant for the amount wrongfully paid. *Hudson v. Fisher*, 2010 OK CIV APP 69, ¶ 12, 239 P.3d 970, 973 (citing *Shebester v. Triple Crown Insurers*, 1992 OK 20, 826 P.2d 603, 610).

The Court agrees with Defendant that the fact that—under Texas law—Defendant had no duty to consider competing claims is of no moment. This Court has established that Oklahoma law governs the insurer's duties in this case. Order, Doc. No. 64. Thus, Defendant was to consider competing claims or risk liability for wrongful payout. *See*

12

*Hudson,* 239 P.3d at 973. The question is, then, whether Plaintiff has introduced evidence that presents an issue of material fact as to whether Defendant had sufficient information to consider all of the relevant facts and nevertheless failed to do so.

Plaintiff asserts that Defendant knew Andrade had reported being "very sore." Motion, Doc. No. 92, Ex-4 at 2. And Sierra's reported injuries were a "sore neck and arm." *Id*. Defendant knew Sierra was likely undergoing physical therapy, though Gourrier did not produce any medical bills or records for Sierra and only incomplete records for Calderon. *Id.*, Ex-6 at 2. Plaintiff asserts, and Defendant does not directly refute, that Defendant had enough information to know Calderon's claim was worth the $30,000 limit. *Id.* at Ex-2, 1 ("Please know that we are not saying Mr. Calderon's claim is not worth $30,000, but we need more information in order to determine the extent of his injury."). Andrade had not formally filed a claim with Defendant at that time. Motion, Doc. No. 92, Ex.16, 3 ("[Andrade hasn't really presented a claim yet."). Despite having gathered no further information about Andrade or Sierra, Defendant accepted the settlement offer three days after Gourrier's short deadline had expired. *Id*. ("Sierra's injury appears to be soft tissue and the remaining $30,000 coverage should be sufficient even if claimant Andrade presents a claim.").

Drawing all reasonable inferences in Plaintiff's favor, these facts are enough for Plaintiff's breach of contract claim to survive summary judgment. Defendant had some information about the severity of all injuries arising from the accident, and indication that Calderon's claim was worth more than the settlement offer. The Court emphasizes, however, that this determination in no way indicates whether Plaintiff's claims would

ultimately succeed at trial.

III. **Plaintiff provides no evidence that could give rise to a reasonable inference that Defendant acted tortiously in bad faith.**

Defendant next asserts that there is no merit to Plaintiff's bad faith claims. Motion at 16. As a matter of law, Defendant argues, there is not enough evidence in the record to allow this issue to reach the jury. *Id.* Plaintiff responds that Oklahoma law places this issue squarely in the province of the jury, and the Court should allow these claims to proceed. Response at 22–24.

"[A]n insurer's duty of good faith and fair dealing includes the duty to act in a diligent manner in relation to investigation, negotiation, defense and settlement of claims being made against the insured." *Badillo*, 121 P.3d at 1096. A violation of this duty gives rise to an action in tort, for which consequential and punitive damages may be sought. *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1436 (10th Cir. 1993) (citing *Christian v. Am. Home Assur. Co.*, 577 P.2d 899 (Okla. 1978)). "In particular, in light of the purposes of the bad faith cause of action, courts cannot presume that any failure to reach a settlement when the insurer did not meet a deadline unilaterally imposed by the third-party []—no matter how arbitrary or manipulative the deadline may be—may reasonably be blamed on the insurer." *Bannister v. State Farm Mut. Auto. Ins. Co.,* 692 F.3d 1117, 1123 n.8 (10th Cir. 2012); *Badillo*, 121 P.3d at 1093; *Christian*, 577 P.2d at 901–05.

The decisive question is whether the insurer had a "good faith belief, at the time its performance was requested, that it had justifiable reason for withholding payment under the policy." *Buzzard v. Farmers Ins. Co.*, 824 P.2d 1105, 1109 (Okla. 1992). To

14

determine the validity of the claim, the insurer must conduct an investigation reasonably appropriate under the circumstances. The knowledge and belief of the insurer during the time period the claim is being reviewed is the focus of a bad-faith claim. *Id*

A litigant, however, is not automatically entitled to submit the issue of the breach of the duty of good faith and fair dealing to a jury for determination. *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. App. 1990). A jury question arises only where the relevant facts are in dispute, "or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *Id.* "On a motion for summary judgment, the trial court must first determine . . . whether insurer's conduct may be reasonably perceived as tortious." *Id.* "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id.* "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Oldus*, 6 F.3d at 1436–37. Mere negligence will not suffice to support a bad faith claim. "The minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than reckless conduct necessary to sanction a punitive damages award against an insurer." *Badillo*, 121 P.3d at 1080.

Here, it is undisputed that Defendant took immediate action after the accident to contact the injured claimants. Response at 4. Defendant obtained a few records on Calderon's claim and no records on Sierra's or Andrade's injuries. *Id.* at 4–5. The same

attorney who represented Calderon also represented Sierra. Thus, Defendant could not contact Sierra directly to obtain more information. *Id.* Nevertheless, Defendant made repeated requests of Gourrier for more information. *Id.* Defendant was given a five-day deadline within which it was to accept Calderon's settlement offer. *Id.* Defendant hired counsel, and counsel provided advice under Texas law, which conflicted with Defendant's duties under Oklahoma law. *Id.* at 10. Less than 60 days after the accident and 13 days after Calderon's original demand for settlement, without a complete record regarding all the possible competing claims, Defendant attempted to comply with counsel's advice and reach a settlement. *Id.* at 27. Two of the three claims at issue were eventually settled. When litigation was filed against Plaintiff, Defendant retained defense counsel. *Id.* at 11.

Construing these facts against the insurer and drawing all reasonable inferences in favor of Plaintiff, there is simply no evidence on the record creating a dispute of fact that Defendant acted with bad faith. For example, there is no evidence that Defendant ignored undisputed facts supporting a claim. *Cf. Oulds*, 6 F.3d at 1442. In *Roberts v. State Farm Mutual Auto Insurance*, the Tenth Circuit affirmed a grant of summary judgment on a bad faith insurance claim under Oklahoma law. 61 F. App'x 587, 592 (10th Cir. 2003). There, it was undisputed that the insurance company made timely requests of all relevant medical records, actively began investigating possible claims after receiving initial notice, and made repeated efforts to obtain more information as time progressed. *Id.* ("Under Oklahoma law . . . an insurer's investigation need only be reasonable, not perfect."). Here, there is no indication of excess delays on Defendant's

16

part. To the contrary, Defendant, according to the record, engaged the process from the outset and acted swiftly in attempting to resolve possible competing claims on a limited policy. Defendant retained counsel for Plaintiff and remained actively involved in ongoing litigation. Response at 12. There is no evidence that retained counsel was incompetent or conflicted. Plaintiff points out that Defendant failed to investigate retained counsel's qualifications, experience, or reputation. But Plaintiff points to no authority obligating Defendant to do so, and the Court cannot locate any. Even drawing all reasonable inferences in Plaintiff's favor, these facts do not allege more than mere negligence, and to sustain a bad faith claim, mere negligence is not enough. *Badillo*, 121 P.3d at 1080. As a matter of law, Plaintiff advances no evidence that could give rise to a reasonable inference of bad faith.

## CONCLUSION

The Court finds that a genuine dispute of material fact precludes summary judgment on Plaintiff's claim for breach of contract. The record, however, does not contain evidence that could warrant submitting a bad faith claim to a jury for determination.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment [Doc. No. 92] is **GRANTED IN PART** and **DENIED IN PART** as set forth herein.

**IT IS SO ORDERED** this 27th day of September, 2019.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge