# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOHANNA DABBS, ) | |
| ) | |
| *Plaintiff,* ) | |
| v. ) | Case No. CIV-15-148-D |
| ) | |
| SHELTER MUTUAL INSURANCE ) | |
| COMPANY aka SHELTER MUTUAL ) | |
| INSURANCE CO., ) | |
| ) | |
| *Defendant.* ) | |

## ORDER

In an order dated September 27, 2019, the Court entered summary judgment against Plaintiff Johanna Dabbs on her bad faith claim against Defendant Shelter Mutual Insurance Company. Order [Doc. No. 113]. The Court denied summary judgment on Plaintiff's breach of contact claim. *Id.* The parties then filed a joint motion seeking permission to submit further briefing for a legal determination of what damages, if any, remain available to Plaintiff on her breach of contact claim. [Doc. No. 118]. The Court granted the motion. Order [Doc. No. 119]. The parties then submitted additional briefing on the contract damages issue. [Doc. Nos. 120, 121, and 123]. The Court's most recent order notified the parties that it intends to address the issues raised in those filings in summary judgment proceedings pursuant to Fed. R. Civ. P. 56 and permitted the parties to file additional supplemental briefing. Order [Doc. No. 124]. The parties both submitted additional briefing. [Doc. Nos. 125 and 126].

After considering the case record and those supplemental filings, the Court is compelled to withdraw the previous interlocutory order partially granting Defendant's Motion for Summary Judgment [Doc. No. 113].[1] Therefore, Defendant's Motion for Summary Judgment [Doc. No. 92] is currently at issue. Upon consideration of the parties' initial summary judgment briefing and every supplemental brief filed thereafter, the Court issues its ruling.

## BACKGROUND

The underlying facts in this matter previously noted by the Court have not changed. They are undisputed unless otherwise noted. Plaintiff was insured under an automobile insurance policy issued by Defendant. [Doc. No. 92 at p. 5]. The Policy had maximum liability coverage limits of $25,000 per person and $50,000 per accident. [Doc. No. 92-2 at p. 1]. After purchasing the Policy, Plaintiff was involved in an automobile accident in Harris County, Texas. [Doc. No. 92 at p. 5]. Since the accident occurred in Texas, the policy limits were increased to comply with the Texas minimum coverage requirements; they increased to $30,000 per person and $60,000 per accident. *See* Tex. Transp. Code § 601.072.

The accident happened when Plaintiff ran a red light. [Doc. No. 92 at p. 5]. Plaintiff's car then clipped a vehicle driven by April Andrade and struck another vehicle

---

[1] Under Fed. R. Civ. P. 54(b), "[a] court's disposition of a single claim in a suit involving multiple claims is subject to reconsideration until the entry of judgment on all of the claims, absent an explicit direction for the entry of judgment on the single claim." *First Am. Kickapoo Operations, L.L.C. v. Multimedia Games, Inc.*, 412 F.3d 1166, 1170 (10th Cir. 2005).

2

which Mayra Sierra was driving and in which Vincent Calderon was a passenger. *Id.* Andrade, Sierra, and Calderon were all injured. *Id.*

The accident took place on Saturday, August 13, 2011. *Id.* On Monday, August 15, 2011, Sheri Edwards, the adjuster for the injury claims, contacted Plaintiff, Andrade, and Sierra, and attempted to contact Calderon. *Id.* During that initial contact, Andrade and Sierra stated they had been injured and informed Defendant that Calderon was injured as well. *Id.* at p. 10. On August 17, Defendant learned that the same attorney, Joseph Gourrier, would represent Calderon and Sierra. *Id.* Gourrier informed Defendant that Calderon had a broken leg and Sierra had both neck and arm injuries. *Id.*

On September 15, Gourrier made a policy limits demand for Calderon's claim, offering to settle for $30,000. *Id.* Gourrier gave Defendant five days to respond to the offer. *Id.* Defendant, at that time, still did not have Andrade's medical authorization, Sierra's medical bills or records, and had incomplete records for Calderon. *Id.* at 10–11. Concerned that she had insufficient information about all injuries and a policy limit that could subject the insured to excess liability, the claims adjuster discussed her concerns with her supervisor, requested more information and an extension of the offer deadline from Gourrier, and attempted to recontact Andrade. *Id.* at 11.

On September 21, Gourrier responded to the claims adjuster, providing more information about Calderon's injuries and extending the offer for five more days. *Id.* Around this time, Defendant retained counsel to assist with handling the insurance claims. *Id.* at 12. Counsel advised that Gourrier's time limit was unreasonable and that—under Texas law—Defendant had no obligation to consider competing claims before accepting

3

the settlement offer. *Id.* The offer to settle Calderon's claim for the $30,000 policy limits expired on September 26.

Defendant's counsel, nonetheless, recommended Defendant attempt to settle Calderon's claim for the policy limits. *Id.* at 12. Three days after the expiration of Gourrier's deadline, Defendant offered $30,000 for Calderon's claim. *Id.* at 13. Gourrier refused to accept the policy limit tender. *Id.* Calderon sued Plaintiff, and Defendant retained counsel for Plaintiff in the litigation. *Id.* A jury ultimately found Plaintiff liable to Calderon and awarded damages in the amount of $622,135.60.

## STANDARD OF DECISION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Universal Underwriters Ins. Co. v. Winton*, 818 F.3d 1103, 1105 (10th Cir. 2016). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and "[a]n issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The Court's inquiry must be whether the evidence, when viewed "through the prism of the substantive evidentiary burden," *Anderson*, 477 U.S. at 254, "presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. Although the Court views all facts in the light most favorable to the nonmoving party at the summary judgment stage, "there is no

4

issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

The Court, through a choice of law analysis, has previously ruled that Oklahoma law governs the resolution of this diversity action. *See* Order [Doc. No. 64].

## DISCUSSION

The Court's initial order on Defendant's Motion for Summary Judgment found a genuine dispute of material fact existed which precluded summary judgment on Plaintiff's breach of contract claim. After considering the parties' supplemental filings, the Court is compelled to reconsider that finding. Further, the Court previously ruled that Defendant did not act in bad faith when it failed to accept attorney Gourrier's policy limit offer. The Court, however, did not adequately analyze Plaintiff's bad faith claim under the standard set forth in *Badillo v. Mid Century Insurance Co.*, 121 P.3d 1080 (Okla. 2005), and also applied principles from cases which differ contextually from the instant case. Therefore, after considering the supplemental filings, the Court is also compelled to reanalyze Plaintiff's bad faith claim.[2]

**I.  Defendant did not breach the duty to defend or the duty to indemnify, and Plaintiff must establish bad faith to succeed on a claim for failure to settle within the policy limits.**

"The elements of a breach of contract action are: (1) formation of a contract; (2)

---

[2] Since neither party offered a reason to reconsider the Court's decision regarding Plaintiff's Exhibit 1, Order [Doc. No. 113 at pp. 4–10], and since the Court can find no reason to reconsider that ruling, the Court reaffirms its holding on that issue. The Court will consider Gourrier's affidavit attached to Plaintiff's Response [Doc. No. 99] only to the extent that it contains statements that could be reduced to admissible evidence at trial.

5

breach of the contract; and (3) damages as a result of that breach." *Morgan v. State Farm Mut. Auto. Ins. Co.*, 488 P.3d 743, 748 (Okla. 2021). Insurers generally bear two duties under liability insurance policies: the duty to defend and the duty to indemnify. *First Bank of Turley v. Fid. & Deposit Ins. Co. of Md.*, 928 P.2d 298, 302–03 (Okla. 1996). The duty to defend relates to the obligation of the insurer to pay for and provide defense to litigation for claims covered under the policy. *Id.* at 303.

In accordance with these duties, Defendant provided a competent defense for Plaintiff through the appeal of the jury verdict and paid the policy limits to Calderon after the appeal was denied. Plaintiff, nevertheless, argues Defendant breached the duty to defend by failing to accept a settlement offer within the policy limits.

The duty to defend affords the insurer "the right to control the course of the defense of the liability claim and to decide on litigation strategy." *Milroy v. Allstate Ins. Co.*, 151 P.3d 922, 927 (Okla. Civ. App. 2007). This, of course, includes weighing the merits of settlement offers. *Id.* "It is this right to control the litigation that exposes the insurer to a claim for bad faith in a case where the verdict against the insured exceeds policy limits." *Id.*

Under Oklahoma law, an insurer's failure to accept a settlement offer within the policy limits potentially exposes the insurer to liability for the "entire judgment obtained against the insured, regardless of policy limitations." *Magnum Foods Inc. v. Cont'l Cas. Co.*, 36 F.3d 1491, 1504 (10th Cir. 1994) (citing *Am. Fid. & Cas. Co. v. L.C. Jones Trucking*, 321 P.2d 685, 687 (Okla. 1957), overruled on other grounds by *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093–94, 1094 & n.7 (Okla. 2005)). Such liability must

6

be "premised on a finding of bad faith." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1237 (10th Cir. 2012). And claims premised on bad faith arise in tort—not contract. *See Christian v. American Home Assur. Col.,* 577 P.2d 899, 904–05 (Okla. 1977); *see also Magnum Foods*, 36 F.3d at 1504 ("If an insurer fails to act cooperatively to reach a settlement . . . then the insurer's conduct may be reasonably perceived as tortious, and the trial court may submit the issue of bad faith to the jury."). Further, a clear pronouncement of an insurer's duty to settle a claim against its insured is found in *Badillo v. Mid Century Insurance Co.*, which discusses the duty only in terms of bad faith. 121 P.3d 1080 (Okla. 2005).

Therefore, Plaintiff's claim that Defendant breached the duty to defend by failing to accept a settlement offer within the policy limits is merely a repackaged version of her bad faith failure to settle claim. Oklahoma law does not support this claim as one for breach of contract. Therefore, because Defendant fulfilled its contractual obligations to defend and indemnify Plaintiff, there is no evidence to support a breach of contract claim. Summary judgment is granted to Defendant on Plaintiff's breach of contract claim.

## II. Defendant's conduct does not meet the minimum culpability requirement for bad faith under Oklahoma law.

For bad faith claims, a jury question arises only where the relevant facts are in dispute "or where the undisputed facts permit differing inferences as to the reasonableness and good faith of the insurer's conduct." *City Nat'l Bank & Trust Co. v. Jackson Nat'l Life Ins.*, 804 P.2d 463, 468 (Okla. Civ. App. 1990). On a motion for summary judgment, "the Trial Court must first determine, under the facts of the particular case and as a matter of

law, whether insurer's conduct may be reasonably perceived as tortious." *Id.* "Until the facts, when construed most favorably against the insurer, have established what might reasonably be perceived as tortious conduct on the part of the insurer, the legal gate to submission of the issue to the jury remains closed." *Id.* at 468–69. "To hold otherwise would subject insurance companies to the risk of punitive damages whenever litigation arises from insurance claims." *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1437 (10th Cir. 1993).

Oklahoma law places "a very great duty" upon an insurer to determine whether litigation against its insured should be settled, when possible, within policy limits. *Hazelrigg v. Am. Fid. & Cas. Co.*, 241 F.2d 871, 873 (10th Cir. 1957) (citing *Nat'l Mut. & Cas. Co. v. Britt*, 200 P.2d 407 (Okla. 1948)). That duty requires an insurer to treat third-party claims against an insured as if the insurer alone is responsible for the entire claim. *Badillo*, 121 P.3d at 1093.[3] The insurer must "act in a diligent manner in relation to investigation, negotiation, defense and settlement of claims being made against the insured." *Id.* at 1096.

Mere negligence will not suffice to support a bad faith claim. "The minimum level of culpability necessary for liability against an insurer to attach is more than simple negligence, but less than reckless conduct necessary to sanction a punitive damages award against an insurer." *Id.* at 1094.

---

[3] Though *Badillo* instructs insurers to approach settlement negotiations as if the policy limits do not exist, *Id*. at 1093, this Court is aware of no Oklahoma state court that has applied this standard in a case involving multiple third-party claimants.

Defendant's conduct does not meet the minimum culpability requirement for a bad faith claim under *Badillo v. Mid Century Insurance Co.*, 121 P.3d 1080 (Okla. 2005). Promptly after learning of the accident, Defendant attempted to gather the medical information of all three potential claimants. Attorney Gourrier made the initial settlement demand for Calderon's claim just over a month after the accident. At that time, Defendant lacked important information regarding Calderon's claim, including the extent of his injuries and the amount of his medical expenses. Defendant requested more information from Gourrier regarding Calderon's injuries and asked for an extension of the deadline for the settlement offer. Defendant also sought advice from legal counsel regarding Gourrier's offer; counsel advised Defendant that the offer's time limit was unreasonable.

In response to Defendant's requests, Gourrier provided more information about Calderon's injuries and extended the deadline of the offer. At that point, Defendant knew more about Calderon's claim, but it still lacked adequate information about the extent of the other claimants' injuries.

The timing of Gourrier's offer and the compressed time constraints he placed on it presented significant challenges to Defendant. A reasonable settlement offer requires a reasonable investigation. *See Newport v. USAA*, 11 P.3d 190, 197 (Okla. 2000), as corrected (Aug. 1, 2000) ("The duty of good faith and fair dealing merely prevents an insurer from offering less than what its own investigation reveals to be the claim's value."). But Gourrier's offer required Defendant to negotiate a settlement for Calderon's claim before it could fully investigate all the claims against Plaintiff.

To be sure, Defendant considered the policy limits in that it was seeking a potential comprehensive resolution to all the claims against Plaintiff. But Oklahoma law does not instruct insurers that they may not seek a comprehensive resolution of all claims against an insured, and Defendant's attempt to do so, under compressed time constraints, does not rise beyond the level of mere negligent conduct.[4]

Defendant, by conducting diligent investigation, earnest negotiation, and competent (although unsuccessful) defense of the claims against Plaintiff, made a reasonable attempt to avoid liability for Plaintiff—for the total damage she caused—in excess of the policy limits. The facts do not indicate that Defendant failed to approach settlement negotiations as if it alone were liable for the entire amount of the claim. Defendant's conduct cannot reasonably be perceived as tortious; therefore, summary judgment on Plaintiff's bad faith claim is appropriate. *See City Nat'l Bank & Trust Co.* 804 P.2d at 468.

## CONCLUSION

For the foregoing reasons, the Court finds that, according to the undisputed material facts, Defendant is entitled to judgment as a matter of law on Plaintiff's breach of contract and bad faith claims. Accordingly, Defendant's Motion for Summary Judgment [Doc. No. 92] is **GRANTED**, and this Order disposes of all of Plaintiff's claims in this action. A separate judgment will thus be issued.

---

[4] "Most insurers feel obligated to protect their policyholders against uninsured liability if possible, so leaving some claims unresolved is an unappealing option. Insurers further recognize that if the policyholder is exposed to uninsured liability for the remaining claims, that will almost certainly lead to bad faith litigation." Douglas R. Richmond, Too Many Claimants or Insureds and Too Little Money: Insurer's Good Faith Dilemmas, 44 Tort & Ins. L.J. 871 (2009).

**IT IS SO ORDERED** this 23rd day of November, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge